UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| LARRY PRAIRIE CHICKEN,<br><br>Plaintiff,<br><br>vs.<br><br>XAVIER BECERRA, SECRETARY US DEPT OF HEALTH AND HUMAN SERVICES, OFFICIAL CAPACITY,<br><br>Defendant. | 5:22-CV-05065-RAL<br><br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS AND 1915 SCREENING |

Plaintiff Larry Prairie Chicken filed a pro se lawsuit under Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act of 1967, and the Americans with Disabilities Act of 1990. Doc. 1. Prairie Chicken moves for leave to proceed in forma pauperis and has filed a financial affidavit. Doc. 2. Prairie Chicken has also filed a motion to appoint counsel, Doc. 3. This Court now screens Prairie Chicken's complaint under 28 U.S.C. § 1915(e)(2).

I.  **Motion for Leave to Proceed In Forma Pauperis**

A federal court may authorize the commencement of any lawsuit without prepayment of fees when an applicant submits an affidavit stating he or she is unable to pay the costs of the lawsuit. 28 U.S.C. § 1915(a)(1). "[I]n forma pauperis status does not require a litigant to demonstrate absolute destitution." Lee v. McDonald's Corp., 231 F.3d 456, 459 (8th Cir. 2000). But in forma pauperis status is a privilege, not a right. Williams v. McKenzie, 834 F.2d 152, 154 (8th Cir. 1987). Determining whether an applicant is sufficiently impoverished to qualify to proceed in forma pauperis under § 1915 is committed to the sound discretion of the district court. Cross v. Gen. Motors Corp., 721 F.2d 1152, 1157 (8th Cir. 1983). After review of Prairie

1

Chicken's financial affidavit, this Court finds that he has insufficient funds to pay the filing fee. Thus, Prairie Chicken's motion for leave to proceed in forma pauperis, Doc. 2, is granted.

## II.     1915 Screening

### A.     Factual Allegations of Prairie Chicken's Complaint

Prairie Chicken claims that Emily Williams, Dr. Michael Williams, and Dr. Josephine Chase, supervisors at Rapid City Indian Health Services, deliberately gave him a lower evaluation score in order to remove him from his position as a provider of outpatient alcohol and drug services for Sioux San Hospital. Doc. 1 at 4-7. He claims that these actions began on October 23, 2018, when these supervisors informed Prairie Chicken and other staff of retirement dates and began discussing retirement options. Id. at 4.

Prairie Chicken asserts that his Performance Measurement Assessment Plan (PMAP) evaluation scores in previous years never fell below 3.0 but that his 2019 PMAP score was deflated to 2.5. Id. at 4, 10. He alleges that he did not sign his 2019 evaluation because he did not agree with his score. Id. at 4. He alleges that he requested a change in his score to 3.0 or higher, as this was required for him to continue employment with Indian Health Services and to retain his pay and benefits. Id. Prairie Chicken states that his score was not changed, even though he provided documentation of "numbers [and] contacts to change [his] PMAP score." Id. He states that he instead received a Reduction in Force notice. See id.

Prairie Chicken claims that he has been discriminated against based on his age, his claim of Indian Preference, and his gender. Id. at 4, 6. He claims that his supervisors provided higher PMAP scores to employees that they favored. Id. at 4. He alleges that female employees are allowed to stay employed despite performance issues. Id. at 6. He specifically alleges that one female employee is often absent and that Dr. Chase often has to cover for her but that Dr. Chase

2

excuses this as "teamwork." Id. He also alleges that another female Caucasian employee had performance issues but was allowed to stay employed after she claimed that she did not scroll down far enough in an email that identified those issues. Id. at 6-7.

Prairie Chicken also asserts other sources of bias and error on the part of his supervisors. Id. at 4-6. He claims that Dr. Williams was previously Emily Williams' supervisor, but Emily Williams is now Dr. Williams' supervisor. Id. at 5. He asserts that "Dr. Chase has business ties with" Dr. Williams' spouse. Id. Prairie Chicken states that his supervisors were unfamiliar with his position as a provider of outpatient alcohol and drug services and that they were unsure of the source of the funding for the position. Id. at 5. He alleges that one stated reason for downgrading his PMAP score was that he no longer provided a certain methamphetamine program, but he claims that this program ended because transportation services for the program were no longer provided, which was out of his control. Id. Prairie Chicken alleges that another stated reason for his lowered score was that he was taking longer to complete assessments for substance use disorders. Id. He states that this occurred because a web-based assessment tool was not approved or paid for, which was also out of his control, and that his current supervisors failed to offer needed training regarding the available tools. Id.

Prairie Chicken asserts that his supervisors did not respond to his requests for review of his patient contact numbers and for a change to his PMAP score. Id. at 6. Instead, he alleges that they "played dumb" by "claiming to abolish [his] position." Id. He claims that his supervisors and the directors at Great Plains Area Behavioral Health are unfamiliar with his job duties and the timeframes for completing his tasks. Id. He alleges collusion between his supervisors and others at Rapid City Indian Health Services.

3

Prairie Chicken filed a charge with the Equal Employment Opportunity Commission (EEOC) on June 11, 2019, and that he received a Notice of Right to Sue letter from the EEOC on April 27, 2022, which is attached to his complaint. Id. at 9; Doc. 1-1 at 1-6. The Notice of Right to Sue letter explains that Prairie Chicken brought two claims for racial, gender, disability, and age discrimination, as well as for retaliation, alleging that his PMAP score did not accurately reflect his job performance and that he was subjected to a Reduction in Force. Doc. 1-1 at 2. The EEOC dismissed the PMAP score claim as untimely and investigated the Reduction in Force claim, ultimately finding that Prairie Chicken "failed to establish a prima facie case of discrimination or reprisal." Id.

Prairie Chicken asks that his PMAP score be raised to a 3.0. Doc. 1 at 10. He also asks that he be granted continued employment at the Rapid City Health Facility with the same pay and grade, three years of salary and benefits or $200,000, and attorney's fees. Id.

### B. Legal Standard

A court when screening under § 1915A must assume as true all facts well pleaded in the complaint. Estate of Rosenberg v. Crandell, 56 F.3d 35, 36 (8th Cir. 1995). Pro se and civil rights complaints must be liberally construed. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted); Bediako v. Stein Mart, Inc., 354 F.3d 835, 839 (8th Cir. 2004) (citation omitted). Even with this construction, "a pro se complaint must contain specific facts supporting its conclusions." Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985) (citation omitted); see also Ellis v. City of Minneapolis, 518 F. App'x 502, 504 (8th Cir. 2013) (per curiam) (citation omitted). Civil rights complaints cannot be merely conclusory. Davis v. Hall, 992 F.2d 151, 152 (8th Cir. 1993) (per curiam) (citation omitted); Parker v. Porter, 221 F. App'x 481, 482 (8th Cir. 2007) (per curiam) (citations omitted).

A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citation omitted). If a complaint does not contain these bare essentials, dismissal is appropriate. See Beavers v. Lockhart, 755 F.2d 657, 663-64 (8th Cir. 1985). Twombly requires that a complaint's factual allegations must be "enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true[.]" 550 U.S. at 555 (internal citation omitted); see also Abdullah v. Minnesota, 261 F. App'x 926, 927 (8th Cir. 2008) (per curiam) (noting that a "complaint must contain either direct or inferential allegations respecting all material elements necessary to sustain recovery under some viable legal theory" (citing Twombly, 550 U.S. at 553-63)). Further, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and that a recovery is very remote and unlikely." Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (internal quotation omitted) (quoting Twombly, 550 U.S. at 556).

When a district court determines a plaintiff is financially eligible to proceed in forma pauperis under 28 U.S.C. § 1915(a), the court must then determine whether the complaint should be dismissed under 28 U.S.C. § 1915(e)(2)(B). Martin-Trigona v. Stewart, 691 F.2d 856, 857 (8th Cir. 1982); see also Key v. Does, 217 F. Supp. 3d 1006, 1007 (E.D. Ark. 2016). The court must dismiss claims if they "(i) [are] frivolous or malicious; (ii) fail[ ] to state a claim on which relief may be granted; or (iii) seek[ ] monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). The Court will now assess the requisite exhaustion of administrative remedies and evaluate each individual claim under 28 U.S.C. § 1915.

**C.   Prairie Chicken's Causes of Action**

5

1.  **Administrative Exhaustion of Employment Discrimination Claims**

Plaintiffs alleging violation of federal discrimination statutes must first file complaints with the EEOC. Sellers v. Deere & Co., 791 F.3d 938, 943 (8th Cir. 2015). This Court can only consider employment discrimination claims once they have been exhausted through the EEOC process. See Weatherly v. Ford Motor Co., 994 F.3d 940, 944 (8th Cir. 2021). The EEOC must be offered the "initial opportunity to investigate allegations of employment discrimination and to work with the parties toward voluntary compliance and conciliation." See Parisi v. Boeing Co., 400 F.3d 583, 585 (8th Cir. 2005).

Prairie Chicken filed a complaint with the EEOC regarding his Title VII, ADEA, and ADA claims. Doc. 1 at 9; Doc. 1-1 at 1-2. He received a Notice of Right to Sue letter, dated April 27, 2022, explaining that he had the right to file a civil action in United States District Court within 90 days of receipt of the decision denying his claims. Doc. 1-1 at 5. Prairie Chicken filed this lawsuit on July 26, 2022, 90 days after the issuance of his Notice of Right to Sue letter. Doc. 1. Thus, he has properly exhausted his administrative remedies through the EEOC and can bring this lawsuit.

2.  **Title VII Claims**

Under Title VII of the Civil Rights Act of 1964, an "employer" is prohibited from discriminating against "any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2(a)(1). To establish a prima facie case of discrimination based on a protected class, a plaintiff must show "(1) that she is within the protected class; (2) that she was qualified to perform her job; (3) that she suffered an adverse employment action; and (4) that nonmembers of her class . . . were not treated the same." Boone v. Larson Mfg. Co., Inc., 299 F.

Supp. 2d 1008, 1017 (D.S.D. 2003). The Supreme Court of the United States has noted that "[t]he facts necessarily will vary in Title VII cases" and that the prima facie standard discussed above "is not necessarily applicable in every respect to differing factual situations." McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 n.13 (1973). "An inference of discrimination may be raised by evidence that a plaintiff was replaced by or treated less favorably than similarly situated employees who are not in the plaintiff's protected class." Price v. S-B Power Tool, 75 F.3d 362, 365 (8th Cir. 1996) (citation omitted).

Here, Prairie Chicken alleges facts sufficient to state claims under Title VII. He claims that he has been treated unfavorably by his employer based on his Native American race and male gender, that he was qualified to perform his job, that he suffered adverse employment actions, and that Caucasian and female employees were not treated the same. Doc. 1 at 4-7; see Boone, 299 F. Supp. 2d at 1017. Thus, he makes a prima facie showing of employment discrimination, and his claims under Title VII survive § 1915 screening.

### 3. ADEA Claims

"The ADEA prohibits an employer from discharging 'any individual or otherwise discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age.'" Hindman v. Transkrit Corp., 145 F.3d 986, 990 (8th Cir. 1998) (alteration in original) (quoting 29 U.S.C. § 623(a)(1)), abrogated on other grounds by Torgerson v. City of Rochester, 643 F.3d 1031 (8th Cir. 2011) (en banc). When a plaintiff's claim of age discrimination is not based on direct evidence of intentional discrimination, the plaintiff must rely on the prima facie standard discussed above. See id. "The ADEA protects individuals who are at least forty years old." Id. (citing 29 U.S.C. § 631). Thus, Prairie Chicken must show that he is at least forty years old, that he is qualified to perform his job,

that he suffered an adverse employment action, and that employees who are not at least forty years old were treated differently. See id. (citing Ziegler v. Beverly Enterprises-Minn., Inc., 133 F.3d 671, 675 (8th Cir. 1998)).

Here, Prairie Chicken alleges facts sufficient to state claims under the ADEA. He claims that he was over forty years old at the time of the incidents in question, that he was qualified to perform his job, that he suffered adverse employment actions, and that younger employees were not treated the same. Doc. 1 at 4-7; see Hindman, 145 F.3d at 990 (citing Ziegler, 133 F.3d at 675). Thus, he makes a prima facie showing of employment discrimination, and his claims under the ADEA survive § 1915 screening.

### 4. ADA Claims

The ADA requires employers to provide "reasonable accommodations to the known physical . . . limitations of an otherwise qualified individual with a disability who is an . . . employee, unless [they] can demonstrate that the accommodation would impose an undue hardship." Fenney v. Dakota, Minn., and E. R.R. Co., 327 F.3d 707, 711 (omissions in original) (quoting 42 U.S.C. § 12112(b)(5)(A)). "To obtain relief under the ADA, [a plaintiff] must show that he (1) has a 'disability' within the meaning of the ADA, (2) is a 'qualified individual' under the ADA, and (3) 'suffered an adverse employment action as a result of the disability.'" Id. (quoting Duty v. Norton-Alcoa Proppants, 293 F.3d 481, 490 (8th Cir. 2002)).

Prairie Chicken fails to state a claim under the ADA because he fails to allege that he has a disability. Prairie Chicken's initial filing with the EEOC alleged that he was discriminated against "on the bases of race (American Indian), sex (male), disability (mental and physical), and age (67)[.]" Doc. 1-1 at 2. But in the facts of his complaint, he only alleges that he has "been discriminated against because of age, Indian Preference, [and] sex" and makes no mention of a

disability. See Doc. 1 at 6. Prairie Chicken does indicate on his complaint form that his employer failed to accommodate his disability and that he has been discriminated against based on a "disability or perceived disability[,]" but he provides no facts at all about any claimed disability. See id. at 8. Even if this Court construed this portion of Prairie Chicken's complaint form along with his attached Notice of Right to Sue letter as alleging disability discrimination, he still fails to identify his disability or explain how his alleged adverse employment actions are a result of his disability as required under Fenney. See 327 F.3d at 711 (citing Duty, 293 F.3d at 490). Thus, Prairie Chicken's ADA claims are dismissed without prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii).

### III. Motion for Appointment of Counsel

Prairie Chicken has filed a motion for appointment of counsel. Doc. 3. "A pro se litigant has no statutory or constitutional right to have counsel appointed in a civil case." Stevens v. Redwing, 146 F.3d 538, 546 (8th Cir. 1998). In determining whether to appoint counsel to a pro se litigant, this Court considers the complexity of the case, the ability of the litigant to investigate the facts, the existence of conflicting testimony, and the litigant's ability to present his claims. Id. At this time, Prairie Chicken's claims do not appear to be complex, and he is able to investigate the facts and present his claims adequately. This Court believes that Prairie Chicken is capable of pursuing his claims pro se at this phase of litigation, and his motion for appointment of counsel, Doc. 3, is denied at this time.

### IV. Order

Accordingly, it is

ORDERED that Prairie Chicken's motion for leave to proceed in forma pauperis, Doc. 2, is granted and his initial filing fee is waived. It is further

ORDERED that Prairie Chicken's motion for appointment of counsel, Doc. 3, is denied. It is further

ORDERED that Prairie Chicken's Title VII and ADEA claims survive § 1915 screening. It is further

ORDERED that Prairie Chicken's ADA claims are dismissed without prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii). It is further

ORDERED that the Clerk of Court shall prepare and issue a summons for service under Rule 4(i) (1) and (2) of the Federal Rules of Civil Procedure. It is further

ORDERED that the United States Marshals Service shall serve the completed summons, together with a copy of the complaint, Doc. 1, and this order upon the defendant. It is further

ORDERED that the defendant will serve and file an answer or responsive pleading to the complaint on or before 60 days following the date of service because the defendant falls under Fed. R. Civ. P. 12(a)(2). It is finally

ORDERED that Prairie Chicken will keep the court informed of his current address at all times. All parties are bound by the Federal Rules of Civil Procedure and by the court's Civil Local Rules while this case is pending.

DATED December 29th, 2022.

BY THE COURT:

ROBERTO A. LANGE
CHIEF JUDGE