UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| LARRY PRAIRIE CHICKEN, | 5:22-CV-05065-RAL |
| Plaintiff, | |
| vs. | OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS CLAIM 2 |
| XAVIER BECERRA, SECRETARY US DEPT OF HEALTH AND HUMAN SERVICES, IN HIS OFFICIAL CAPACITY; | |
| Defendant. | |

Plaintiff Larry Prairie Chicken, a former employee with Indian Health Services (the "Agency"), sued the Secretary of the U.S. Department of Health and Human Services alleging race, gender, and age discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII"), and the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 et seq. ("ADEA").[1] Doc. 1 at 3. He argues that he was subject to discrimination in (1) his employer's execution of a reduction in force and (2) his Performance Management Appraisal Program ("PMAP") evaluation. Id. at 4–7. The United States moves to dismiss Claim 2 regarding the PMAP evaluation, arguing Prairie Chicken failed to exhaust administrative remedies with the Equal Employment Opportunity Commission ("EEOC"). Doc. 17. For the reasons discussed below, this Court agrees.

I.      **Facts**

---

[1] Prairie Chicken also alleged disability discrimination under the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12112 et seq., in his initial Complaint. However, this Court dismissed the disability claim without prejudice in a § 1915 screening order, Doc. 6 at 8–9, and thus does not address it here.

Prairie Chicken worked for the Agency for 28 years as a Rehabilitation Aftercare Specialist in the Rapid City Service Unit.[2] Doc. 1 at 4. During his tenure with the Agency, Prairie Chicken never scored below a 3.0 on his PMAP; however, in March 2019, Prairie Chicken's supervisors, Emily Williams, Dr. Williams, and Dr. Chase, gave him a score of 2.5. Id. Prairie Chicken disputed the score and provided documentation to support a score of 3.0, but his supervisors were unresponsive and did not change the evaluation. Id. Prairie Chicken alleges the motivation behind the score and failure to correct it was age, sex, and race discrimination and that the Agency "favored" other employees by giving them better PMAP scores. Id. at 4, 6–7.

On June 11, 2019, Prairie Chicken contacted an equal employment opportunity ("EEO") counselor at the EEOC to discuss initiating an action for race, gender, and age discrimination under Title VII and the ADEA for the Agency's actions. Doc. 1 at 8; Doc. 1-1 at 2. Under 29 CFR § 1614.108, the Agency investigated Prairie Chicken's discrimination claims and submitted a Report of Investigation accepting Claim 1 but dismissing Claim 2 for untimeliness. Doc. 1-1 at 2; see also 29 CFR § 1614.107(a)(2), (b) (allowing an agency to dismiss a complaint, or part thereof, for "fail[ing] to comply with the applicable time limits contained in §§ 1614.105, 1614.106 and 1614.204(c)"). Prairie Chicken then requested a hearing before an EEOC Administrative Judge ("AJ") and contested the dismissal of Claim 2, explaining he had emails that showed he was not given his signed PMAP evaluation until June of 2019. Doc. 1-1 at 3; Doc. 20 at 2. The AJ gave Prairie Chicken until June 17, 2020, to move for reinstatement of Claim 2, but he did not do so until October 20, 2020, blaming his counsel for the failure. Doc. 1-1 at 2. The AJ did not accept

---

[2] On August 16, 2019, Prairie Chicken retired pursuant to the reduction in force that serves as the basis for Claim 1. Doc. 1 at 4; Doc. 1-1 at 1. Claim 1, which is not the subject of this Partial Motion to Dismiss, was allegedly the result of a new contract "which would result in the Great Plains Tribal Charmen's Health Board assuming some of the Rapid City Service Unit's operations," thereby causing some federal positions to be "abolished." Doc. 1-1 at 1.

Prairie Chicken's late argument on Claim 2 and upheld the Agency's dismissal without considering the additional evidence.  Id.; see also § 1614.107(a)(2), (b) (allowing agency dismissal for untimeliness); 29 CFR § 1614.109(b) ("Administrative judges may dismiss complaints pursuant to § 1614.107, on their own initiative, after notice to the parties, or upon an agency's motion to dismiss a complaint.").  The AJ also granted summary judgment in favor of the defendant on Claim 1 because Prairie Chicken failed to make out a prima facie case of discrimination, which obviated the need for a hearing.  Doc. 1-1 at 2.  The AJ issued its decision, the EEOC adopted the decision by final order, and Prairie Chicken appealed.  Id.  On appeal, the EEOC affirmed.  Id. at 4.

Prairie Chicken received a right to sue letter on April 27, 2022, and initiated this present action, attempting to bring both claims before this Court.  See generally Doc. 1.  The Defendant moved to dismiss Claim 2 under Fed. R. Civ. P. 12(b)(6) for failing to state a claim upon which relief can be granted by not exhausting administrative remedies.  Doc. 17; Doc. 18 at 2.  Prairie Chicken counters that the EEOC erred in dismissing his claim because the governing regulations required the EEOC to toll deadlines under equitable principles and to accept his additional evidence, which allegedly would have shown his claim was timely.  Doc. 20 at 2.

## II.    Standard of Review

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  A court must accept the plaintiff's factual allegations as true and make inferences in the plaintiff's favor, but it need not accept the plaintiff's legal conclusions.  Retro Television Network, Inc. v. Luken Commc'ns, LLC, 696 F.3d 766, 768–69 (8th Cir. 2012).  The plaintiff must plead enough facts to "state a claim to relief that is plausible on its face," meaning "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

When ruling on a Rule 12(b)(6) motion, a court generally must ignore materials outside the pleadings, but it may consider "materials necessarily embraced by the pleadings, including exhibits attached to the complaint and matters of public record." Lemay v. Mays, 18 F.4th 283, 289 (8th Cir. 2021) (internal quotation marks and citations omitted). An EEOC charge is a public record which can be considered on a motion to dismiss. Blakley v. Schlumberger Tech. Corp., 648 F.3d 921, 931 (8th Cir. 2011) (citations omitted). A court may also consider a plaintiff's failure to exhaust administrative remedies when ruling on a motion to dismiss. See ABF Freight Sys. v. Int'l Bhd. of Teamsters, 728 F.3d 853, 861 (8th Cir. 2013) ("If an affirmative defense is apparent on the face of the complaint, that defense can provide the basis for dismissal under Rule 12(b)(6)." (cleaned up and citations omitted)); Coons v. Mineta, 410 F.3d 1036, 1040 (8th Cir. 2005) ("Under Zipes [v. TWA, Inc., 455 U.S. 385 (1982),] a federal employment lawsuit may be subject to dismissal if the administrative deadline is not met, but it is not because jurisdiction is lacking.").

### III. Analysis

To bring a claim under Title VII or the ADEA, a plaintiff must first exhaust his or her administrative remedies with the EEOC. Tyler v. Univ. of Ark. Bd. of Trs., 628 F.3d 980, 989 (8th Cir. 2011) (Title VII); Coons, 410 F.3d at 1039 (ADEA). For Title VII and ADEA claims brought by federal employees, a plaintiff timely exhausts administrative remedies by complying with the relevant regulations, including 29 CFR § 1614.105(a)(1) and (2), which state the following:

(1) An aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action.

(2) The agency or the Commission shall extend the 45-day time limit in paragraph (a)(1) of this section when the individual shows that he or she was not notified of the time limits and was not otherwise aware of them, that he or she did not know and reasonably should not have been known that the discriminatory matter or personnel action occurred, that despite due diligence he or she was prevented by circumstances beyond his or her control from contacting the counselor within the time limits, or for other reasons considered sufficient by the agency or the Commission.

The first question, then, is whether the plaintiff contacted an EEO counselor within 45 days of the discriminatory action. See § 1614.105(a)(1). If not, the claims are subject to dismissal as untimely unless the 45-day window is subject to tolling under subsection (b). See § 1614.105(a)(2).

## A. Timely Exhaustion of Remedies

Prairie Chicken claims that his contact with the EEO counselor was timely under § 1614.105(a)(1) of the regulation. For a claim to be timely, the plaintiff must contact an EEO counselor within 45 days of learning of the allegedly discriminatory action. § 1614.105(a)(1); Betz v. Chertoff, 578 F.3d 929, 935 (8th Cir. 2009) ("Federal employees generally must report discrimination to an EEO counselor within 45 days of an occurrence."). In employment discrimination cases, the limitations clock begins when the plaintiff learns of the discriminatory action, even if the plaintiff is not certain any unlawful action took place. See Henderson v. Ford Motor Co., 403 F.3d 1026, 1032–33 (8th Cir. 2005) (indicating the statute of limitations began when the plaintiff "may not have had knowledge of all the facts related to the purported discrimination, but she had knowledge of facts that were sufficient to apprise her of the purported discrimination"); Dring v. McDonnell Douglas Corp., 58 F.3d 1323, 1328 (8th Cir. 1995) ("[T]he accrual date is simply the date on which the adverse employment action is communicated to the plaintiff.").

On the face of the Complaint, Prairie Chicken's contact with an EEO counselor appears to be tardy.  According to the Complaint, he was subjected to allegedly discriminatory conduct when he received his PMAP score on March 15, 2019.  Doc. 1 at 8.  He did not contact an EEO counselor until June 11, 2019, which is 88 days later and well beyond the mandatory 45-day window.  Id. at 9.  The EEOC acknowledged that Prairie Chicken's Complaint could be read to deem the accrual date as April 16, 2019, but even this favorable reading of the facts means his contact with the EEO counselor was nearly three weeks tardy.  See id. at 8 (identifying March 15, 2019, and April 16, 2019, as the dates on which "the alleged discriminatory acts occurred"); Doc. 1-1 at 2 (noting that there are 65 days between an alleged date of discrimination (April 16, 2019) and the date when he contacted an EEO counselor (June 11, 2019)).

Arguing against dismissal of Claim 2, Prairie Chicken claims the PMAP was not effective until June 2019—the same month in which he contacted an EEO counselor— because he contacted his supervisor about the evaluation when he received it in March and did not receive a signed evaluation until June.  Doc. 1 at 4, 8; Doc. 1-1 at 3; Doc. 20 at 3.  Prairie Chicken has not cited (and this Court has not found) any cases suggesting that being in contact with a supervisor or not having a signed evaluation somehow tolls the limitations clock.  Moreover, the record indicates that the signature missing from the PMAP was Prairie Chicken's.  See Doc. 1 at 4 ("I did not agree with [the PMAP score] + did not sign.").  Certainly, an employee's disagreement with and refusal to accept a negative evaluation does not mean the employee did not receive and have notice of it, so the 45-day window to contact an EEO counselor may still run.  His immediate concern about his PMAP score when he received it in March triggered his suspicion of discriminatory conduct to begin his obligation to timely exhaust remedies.  See Doc. 1 at 4; Doc. 20 at 3; see also Henderson, 403 F.3d at 1033 (not requiring certainty of discrimination and only enough facts to apprise

6

plaintiff of discrimination). Claim 2 is untimely on the face of the Complaint, and dismissal is appropriate unless equitable tolling applies.

## B. Equitable Tolling

Prairie Chicken next argues that the tolling provision of § 1614.105(a)(2) rescues his claim from dismissal. Doc. 20 at 2–3. He emphasizes that the regulation states the EEOC "shall extend the 45-day time limit . . . when the individual shows . . . that despite due diligence he or she was prevented by circumstances beyond his or her control from contacting the counselor within the time limits, or for other reasons considered sufficient by the agency or the Commission." § 1614.105(a)(2). Circumstances that fall within the equitable tolling exception are narrow, and tolling "does not apply to 'garden variety' claims of excusable neglect, and should be invoked only in exceptional circumstances truly beyond the plaintiff's control." Jenkins v. Mabus, 646 F.3d 1023, 1028–29 (8th Cir. 2011) (citations omitted). The Eighth Circuit has recognized various circumstances as justification for equitably tolling EEOC administrative deadlines. See, e.g., Jessie v. Potter, 516 F.3d 709, 715 (8th Cir. 2008) (mental condition preventing plaintiff from filing); Briley v. Carlin, 172 F.3d 567, 570 ("excusable ignorance" when an employee lacks "general knowledge" of his or her rights); Anderson v. Unisys Corp., 47 F.3d 302, 306 (8th Cir. 1995) (misleading communications from the state agency regarding filing deadlines); Heideman v. PFL, Inc., 904 F.2d 1262, 1266 (8th Cir. 1990) (affirmative misconduct by the party against whom tolling is asserted).

Although Prairie Chicken is correct the EEOC must excuse untimeliness and toll the 45-day deadline under certain circumstances, such circumstances do not exist to protect Claim 2 from dismissal here. Prairie Chicken presents no evidence or argument as to why the 45-day deadline for notifying an EEO counselor should be tolled in this case. He does not elaborate on any events

or circumstances between receiving his PMAP score on March 15, 2019, and contacting an EEO counselor on June 11, 2019, that were out of his control or were otherwise "sufficient" reasons for the EEOC to toll the deadline under § 1614.105(a)(2). In fact, Prairie Chicken makes a contradictory argument: he alleges that his contact with the EEO counselor was not untimely at all and that the "EEOC abused its discretion by failing to afford Plaintiff . . . the opportunity to show his contact with the EEO counselor was timely." Doc. 20 at 3. This position fails for two reasons. First, it distorts the record. Prairie Chicken had two opportunities to demonstrate his contact with the EEO counselor was timely—namely, once in the Agency's initial investigation and a second time after the AJ allowed him time to move for reinstatement of Claim 2—but he did not present evidence of timeliness at either time. See Doc. 1-1 at 2. Second, the EEOC was in no way obligated under § 1614.105, which *mandates tolling* the 45-day administrative deadline, to allow Prairie Chicken a third opportunity to show *he did not need tolling* at all.

Next, Prairie Chicken implies that, under § 1614.105, the EEOC had to consider his late motion to reinstate Claim 2, which he filed over four months after the deadline the AJ set. He explains the motion's untimeliness was out of his control because his attorney, and not he, had missed the deadline, meaning the EEOC erred by not excusing the untimeliness and reviewing the motion. See Doc. 20 at 3. This Court disagrees. First, Prairie Chicken cites only to § 1614.105 to support his argument, but that regulation's mandatory "shall" language applies only to tolling the 45-day requirement for contacting an EEO counselor; it creates no obligation for the EEOC to toll or extend an investigative deadline it set for Prairie Chicken's benefit. See § 1614.105(a)(2). Second, the regulations allow the AJ discretion and flexibility in imposing investigatory deadlines and handling a claim. See § 1614.109(a) (explaining "the administrative judge shall assume full

responsibility for the adjudication of the complaint, including overseeing the development of the record").[3]

Accordingly, on the face of the Complaint, Prairie Chicken has failed to exhaust administrative remedies on Claim 2 by not timely contacting an EEO counselor after the allegedly discriminatory conduct. He also has not presented sufficient reason to excuse his untimeliness and equitably toll the deadline to contact the EEO counselor, to extend the deadline to move to reinstate Claim 2, or to challenge the EEOC's decision to not accept additional evidence.

## IV.   Conclusion

For the reasons explained, it is

ORDERED that Defendant's Partial Motion to Dismiss, Doc. 17, is hereby granted, and Claim 2 is dismissed without prejudice.

DATED this _8th_ day of November, 2023.

BY THE COURT:

ROBERTO A. LANGE
CHIEF JUDGE

---

[3] The EEOC appellate opinion in this case explains that, under the broad discretion afforded an AJ under § 1614.109, "the AJ properly acted within his discretion to impose a deadline for Complainant's motion to reinstate claim [2]. Moreover, Complainant offered no explanation for his untimely filing. As such, we find that the AJ's denial of Complainant's request to reinstate claim [2] was appropriate." Doc. 1-1 at 3. The district court grants "substantial deference" to an agency's interpretation of its regulations when the interpretation is reasonable. Coons, 410 F.3d at 1039, 1041. This Court sees no reason to disagree with the EEOC's interpretation of § 1614.109 to include the AJ's actions in this case because setting pre-hearing investigative and evidentiary deadlines is an important part of regulating the adjudicative process over which the AJ has "full responsibility."