UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| LARRY PRAIRIE CHICKEN,<br><br>Plaintiff,<br><br>vs.<br><br>XAVIER BECERRA, SECRETARY US DEPT OF HEALTH AND HUMAN SERVICES, IN HIS OFFICIAL CAPACITY;<br><br>Defendant. | 5:22-CV-05065-RAL<br><br><br>OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

Plaintiff Larry Prairie Chicken, a former employee with Indian Health Services ("IHS"), sued the Secretary of the U.S. Department of Health and Human Services ("the Agency") alleging discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* ("ADEA"), and the Americans with Disabilities Act of 1990, 42 U.S.C. § 12112 *et seq.* ("ADA"). Doc. 1 at 3. This Court dismissed the ADA claim in a § 1915 screening order, Doc. 6. Prairie Chicken's Title VII and ADEA claims assert he was subject to discrimination in (1) his employer's execution of a reduction in force and (2) his Performance Management Appraisal Program ("PMAP") evaluation. Doc. 1 at 4–7. The Agency moved to dismiss Prairie Chicken's claim involving his PMAP, Doc. 17, and this Court granted the motion due to Prairie Chicken's failure to timely exhaust his administrative remedies. Doc. 22 at 4–9. The Agency now moves for summary judgment on Prairie Chicken's remaining claim concerning the reduction in force. Doc. 26.

1

I.      **Factual and Procedural Background**[1]

Prairie Chicken is a Native American man who was born in 1951. Doc. 28 ¶ 15. He worked for IHS as a Rehabilitation Aftercare Specialist in the Rapid City Service Unit from 1992 to 2019. Id. ¶ 16. In 2018, the Great Plains Tribal Chairmen's Health Board ("Tribal Organization") began formal negotiations with the Great Plains Area ("GPA") Office of IHS to assume part of the Rapid City Service Unit pursuant to the Indian Self-Determination and Education Assistance Act of 1975 ("ISDEAA"), which allows tribes and tribal organizations to assume operations of federal programs that provide services to federally recognized Native American tribes. Id. ¶¶ 1, 11–12; Doc. 30 ¶ 1. The Tribal Organization represented the Oglala Sioux Tribe and the Cheyenne River Sioux Tribe throughout the negotiations. Id. ¶ 11. The Tribal Organization informed GPA that, as a result of the partial assumption, not all IHS employees at the Service Unit would receive an offer for direct employment through an Intergovernmental Personnel Act agreement ("IPA"). Id. ¶ 14. GPA leadership then authorized a reduction in force ("RIF"). Id.

Troy Bad Moccasin worked as a Supervisory Human Resources Specialist for the GPA office. Doc. 28 at ¶ 23. Bad Moccasin was responsible for administering the RIF. Id. Following the partial assumption by the Tribal Organization, the Rapid City Service Unit would no longer be providing substance abuse and treatment services. Id. ¶ 19. Prairie Chicken, as the only Rehabilitation Aftercare Specialist working for the Behavioral Health Department at the Service

---

[1] Prairie Chicken did not respond to the Agency's Statement of Undisputed Material Facts, Doc. 28. Therefore, all material facts set forth in the Agency's Statement of Undisputed Material Facts are deemed to be admitted. D.S.D. Civ. LR 56.1.D; see also Fed. R. Civ. P. 56(e)(2) (providing that the court can consider a fact undisputed when a party "fails to properly address another party's assertion of fact as required by Rule 56(c)"); Bunch v. Univ. of Ark. Bd. of Trs., 863 F.3d 1062, 1067 (8th Cir. 2017) (holding that a litigant's pro se status does not excuse him from following the district court's local rules).

Unit, was identified as an employee who would be subject to the RIF. Id. ¶¶ 18–19. Bad Moccasin conducted the RIF in accordance with governing regulations. Id. at ¶ 28. He had never personally met or seen an image of Prairie Chicken. Id. at ¶ 24. Bad Moccasin was aware of Prairie Chicken's sex and eligibility for an Indian Preference, but he was unaware of Prairie Chicken's age. Id. at ¶ 25–27. Bad Moccasin weighed retention elements and found that Prairie Chicken was ineligible for placement in a different position. Id. ¶ 29. On June 6, 2019, Bad Moccasin issued Prairie Chicken notice that his position would no longer exist at the Service Unit and that he was to be separated from federal employment effective August 6, 2019. Id. ¶¶ 30–31.

On June 11, 2019, Prairie Chicken contacted an equal employment opportunity counselor at the EEOC to discuss initiating an action for race, gender, and age discrimination under Title VII and the ADEA for the Agency's actions. Doc. 1 at 8; Doc. 1-1 at 2. Prairie Chicken subsequently received a right to sue letter and initiated this present action, seeking monetary damages and reinstatement at the Rapid City Health Facility through an IPA.

**II.    Legal Standard**

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On summary judgment, the evidence is "viewed in the light most favorable to the nonmoving party." True v. Nebraska, 612 F.3d 676, 679 (8th Cir. 2010) (quoting Cordry v. Vanderbilt Motg. & Fin., Inc., 445 F.3d 1106, 1109 (8th Cir. 2006)). There is a genuine issue of material fact if a "reasonable jury [could] return a verdict for either party" on a particular issue. Mayer v. Countrywide Home Loans, 647 F.3d 789, 791 (8th Cir. 2011). A party opposing a properly made and supported motion for summary judgment must cite to particular materials in the record supporting the assertion that a fact is

genuinely disputed. Fed. R. Civ. P. 56(c)(1); Gacek v. Owens & Minor Distrib., Inc., 666 F.3d 1142, 1145 (8th Cir. 2012). "Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." Thomas v. Corwin, 483 F.3d 516, 527 (8th Cir. 2007). Cases alleging discrimination are subject to the same summary judgment standard as any other case. Torgerson v. City of Rochester, 643 F.3d 1031, 1043 (8th Cir. 2011) (en banc).

### III.  Analysis

Title VII prohibits the federal government from discriminating against its employees and those seeking employment based on race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-16. "The ADEA prohibits discrimination against employees, over the age of 40, because of their age." Canning v. Creighton Univ., 995 F.3d 603, 610 (8th Cir. 2021).

Prairie Chicken has not presented direct evidence to support his Title VII or ADEA claim, so this Court applies the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 793 (1973). Under the framework, the plaintiff has the initial burden to establish a prima facie case of discrimination, creating a rebuttable presumption of discrimination. Watson v. McDonough, 996 F.3d 850, 854 (8th Cir. 2021). The burden then shifts to the defendant to produce a legitimate, nondiscriminatory reason for the adverse action of which the plaintiff complains. Id. If the defendant does so, the burden shifts back to the plaintiff to establish the "legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000). "[T]he trier of fact may still consider the evidence establishing the plaintiff's prima facie case 'and inferences properly drawn therefrom . . . on the issue of whether the defendant's explanation is pretextual.'" Id. (quoting Tx Dep't of Cmty. Affs. v. Burdine, 450 U.S. 248, 255 n.10 (1981).

Notwithstanding the burden-shifting nature of the McDonnell Douglas framework, the ultimate burden of proving unlawful discrimination remains with the plaintiff. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506–07 (1993). To succeed on his Title VII claim, Prairie Chicken must prove that his race or sex was a motivating factor for the agency's decision, 42 U.S.C. § 2000e-2(m), but to succeed on his ADEA claim he must prove that age was the "but-for" cause of the adverse action. Canning, 995 F.3d at 611.

To establish a prima facie case of discrimination, Prairie Chicken must demonstrate: (1) he is a member of a protected class; (2) he met the applicable job qualifications; (3) he suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination. See Macklin v. FMC Transp., Inc., 815 F.3d 425, 427 (8th Cir. 2016); Canning, 995 F.3d at 611. The Agency concedes that Prairie Chicken, as an American Indian male over the age of 40, has met the first element but contests the remaining elements. Doc. 27 at 10.

Even if Prairie Chicken met the applicable qualifications and suffered an adverse employment action, he has nevertheless failed to present any evidence to support an inference of discrimination. Prairie Chicken "can satisfy the fourth part of the prima facie case in a variety of ways." Pye v. Nu Aire, Inc., 641 F.3d 1011, 1019 (8th Cir. 2011) (cleaned up and citation omitted). A plaintiff might offer evidence of more favorable treatment of similarly situated employees outside the protected class, "biased comments by a decisionmaker," or "pretext with evidence that an employer 'failed to follow its own policies' or 'shifted its explanation of the employment decision.'" Grant v. City of Blytheville, 841 F.3d 767, 774 (8th Cir. 2016) (quoting Young v. Builders Steel Co., 754 F.3d 573, 578 (8th Cir. 2014)).

Prairie Chicken has not provided evidence of bias from a decisionmaker or shown that the Agency failed to follow its policies or shifted its explanation for the RIF. He does, however, point

to three female employees who were retained or provided IPA agreements: Amber Janis, a nurse practitioner; Dr. Renee McKinley, a psychologist; and Deann Bear Heels, a behavioral health secretary. Doc. 29-1 at 2–4; Doc. 28 ¶ 32. Prairie Chicken has not shown that the retained employees are outside the protected class concerning his ADEA claim, since he has not provided evidence of their ages. However, because each employee is female and Prairie Chicken asserts at least one was Caucasian, Doc. 29-1 at 4, this Court looks to determine whether their retention might give rise to an inference of sex or race discrimination. "To establish that a similarly situated employee not in his protected class was treated more favorably," Prairie Chicken is "required to identify an employee who was 'similarly situated in all relevant respects.'" Grant v. City of Blytheville, 841 F.3d 767, 774 (8th Cir. 2016) (quoting Young v. Builders Steel Co., 754 F.3d 573, 578 (8th Cir. 2014)). None of the individuals Prairie Chicken named shared his position of Rehabilitation Aftercare Specialist. Prairie Chicken conceded in his deposition that his job duties were different from theirs. Doc. 29-1 at 2–4. Thus, Prairie Chicken has not identified a similarly situated employee who was treated more favorably than him, and he has not presented sufficient evidence to infer that sex or race motivated the employment decision. See LaCroix v. Sears, Roebuck, & Co., 240 F.3d 688, 694 (8th Cir. 2001) (holding employees from different departments with different positions are not similarly situated in all relevant respects). Accordingly, Prairie Chicken has failed to establish a prima facie case of sex, race, or age discrimination, and summary judgment is proper.

## IV.   Conclusion

For the reasons explained, it is

ORDERED that Defendant's Motion for Summary Judgment, Doc. 26 is granted.

DATED this 12th day of February, 2025.

                    BY THE COURT:

                    ROBERTO A. LANGE
                    CHIEF JUDGE